# United States District Court, Northern District of Illinois

| **Name of Assigned Judge or Magistrate Judge** | Blanche M. Manning | **Sitting Judge if Other than Assigned Judge** | Sheila Finnegan |
|---|---|---|---|
| **CASE NUMBER** | 09 C 1706 | **DATE** | 3/8/2011 |
| **CASE TITLE** | Rosales vs. The Placers, Ltd., d/b/a Randstad | | |

**DOCKET ENTRY TEXT**

For reasons set forth in this Order, Non-Party Randstad Inhouse Services, L.P.'s Motion to Quash [95] is granted.

■[ For further details see text below.]

Mailed notice.
*Copy to judge/magistrate judge.

## STATEMENT

Defendant The Placers, Ltd. d/b/a Randstad ("The Placers") provides temporary staffing personnel to businesses and individuals in Illinois through a branch office in Chicago. Plaintiffs Fernando Rosales, Servando Ayvar and Juan Herrera all worked for The Placers at various times between August 2002 and December 31, 2006, and were covered by a vacation policy they claim violated the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq*. In this lawsuit, Plaintiffs seek to recover unpaid vacation benefits on behalf of themselves and a class of "other persons similarly situated" pursuant to the Class Action Fairness Act of 2005.

On June 23, 2010, Plaintiffs issued a Rule 45 subpoena to non-party Randstad Inhouse Services, L.P. ("RIS"). The subpoena asks RIS to produce a variety of documents, including handbooks, personnel policies, records "relating to the business relationship between [RIS] and [The Placers]," "documents showing the number of persons employed in Illinois by [RIS]" from August 17, 2002 to the present, and documents showing "the locations of business offices of [RIS] in Illinois between January 1, 2002 and the present." (Doc. 95-1, at 5). RIS responded on July 12, 2010 with a motion for limited intervention and to quash the subpoena. This Court granted the motion for limited intervention without objection on July 22, 2010, and set a briefing schedule on the motion to quash.

Shortly thereafter, on August 17, 2010, The Placers filed a motion with the district court for judgment on the pleadings. (Doc. 104). In light of this motion, the Court deferred ruling on RIS's motion to quash until the district court determined whether the case would proceed. On March 4, 2011, the district court denied The Placers's motion. (Doc. 114, 115). This Court, in turn, now grants RIS's motion to quash.

**STATEMENT**

**Discussion**

"When documents are sought from a nonparty, the usual method of compelling production is via a subpoena under [Rule] 45." *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006). "[T]he scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules." *Wallace v. Hounshel*, No. 1:06-CV-01560-RLY-TAB, 2008 WL 89933, at *2 (S.D. Ind. Jan. 2, 2008). In other words, "[a] subpoena will survive a motion to quash when it designates topics that are reasonably calculated to lead to admissible evidence." *Stock v. Integrated Health Plan, Inc.*, 241 F.R.D. 618, 621 (S.D. Ill. 2007). At the same time, "[s]ubpoenaed non-parties have the right to challenge the burdensomeness and expense of responding to the subpoena." *Silverman v. Motorola, Inc.*, No. 07 C 4507, 2010 WL 4659535, at *5 (N.D. Ill. June 29, 2010) (quoting *Thayer v. Chiczewski*, 257 F.R.D. 466, 469 (N.D. Ill. 2009)). Indeed, "[n]on-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *Whitlow v. Martin*, 263 F.R.D. 507, 512 (C.D. Ill. 2009).

RIS argues that the subpoena should be quashed because Plaintiffs (1) did not comply with Rule 45(b)(2); (2) seek irrelevant information that would be unduly burdensome to produce; and (3) seek information that is confidential. The Court addresses each argument in turn.

**A.   Rule 45(b)(2)**

RIS first objects that Plaintiffs violated Rule 45(b)(2) by serving the subpoena on RIS's counsel in Atlanta, Georgia, and requiring production of documents in Chicago. "A federal district court's subpoena power in most civil litigation runs only within its district (or 100 miles from its courthouse, if that is farther)." *FM Indus., Inc. v. Citicorp Credit Servs., Inc.*, 614 F.3d 335, 339 (7th Cir. 2010). It is undisputed that Atlanta is both outside this Court's district, and more than 100 miles away from Chicago, "the place specified for the . . . production." FED. R. CIV. P. 45(b)(2)(A) and (B). Plaintiffs note, however, that attorney Jeffery Mokotoff, who represents both The Placers and RIS, agreed to accept service of the RIS subpoena without raising any objection to the 100-mile limitation. (Doc. 101-1, Ex. A). In Plaintiffs' view, this means RIS has waived any such objection.

In support of this position, Plaintiffs cite *Atlantic Inv. Mgmt., LLC v. Millennium Fund I, Ltd.*, 212 F.R.D. 395 (N.D. Ill. 2002), in which the court declined to strike a subpoena that was unsigned by the issuing attorney. The court first found that the subpoenaed party had waived objection to the missing signature because he "did not object to this deficiency, but to the contrary, stated that the subpoena was accepted." *Id.* at 397. In addition, the court observed that "this is a defect that readily can be cured," and described the omitted signature as "a mere oversight." *Id.*

RIS contends, without citation, that Mr. Mokotoff's "agreement to accept service of the subpoena does not relieve Plaintiffs of their duty to comply with the federal rules." (Doc. 107, at 4). The Court finds this argument unpersuasive and somewhat disingenuous. Plaintiffs indicate that they originally planned to serve RIS's registered agent in Springfield, Illinois, until Mr. Mokotoff represented that he would accept service directly on RIS's behalf. The Court could instruct Plaintiffs to re-serve the subpoena, but declines to do so in light of Mr. Mokotoff's stated agreement to accept service. RIS's motion to quash the subpoena for failure to comply with Rule 45(b)(2) is denied.

**B.   Relevance and Burden**

RIS next argues that the requested documents are not relevant to Plaintiffs' lawsuit and unduly

burdensome to produce. RIS notes that it is a "limited partnership separate and independent from The Placers," and that none of the plaintiffs in this case was employed by RIS during the relevant time period – i.e., August 2002 through December 31, 2006. (Doc. 96, at 3). Under such circumstances, RIS argues, documents relating to RIS policies and employees have no bearing on Plaintiffs' claims against The Placers.

Plaintiffs disagree, claiming that RIS and The Placers may constitute a single employer, and that the requested discovery is relevant to that issue. (Doc. 101, at 5). Plaintiffs first note that named plaintiff Servando Ayvar received W-2 Tax Statements from both RIS and The Placers for work he performed in 2007. (Doc. 101, at 5). RIS concedes as much, but stresses that Ayvar only worked for RIS after the putative class period ended on December 31, 2006. (Doc. 107, at 1). Thus, Ayvar's employment is not evidence that RIS and The Placers are a single employer for purposes of this lawsuit.

Plaintiffs also claim to have "good reason to believe persons employed by RIS and The Placers worked under the same vacation policy." (Doc. 101, at 5). RIS agrees that it "may have used a vacation policy similar to The Placers through December 31, 2006," but insists that this is "not enough to establish joint employment" under *Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 838 N.E.2d 894 (2005). (Doc. 107, at 1-3). The plaintiffs in *Andrews* were employees of Kowa Printing Corporation ("Kowa Printing"), which was wholly owned by Thomas W. Kowa ("Kowa"). Kowa also owned 97% of another company called Huston-Patterson Corporation ("Huston-Patterson"). The plaintiffs filed suit to recover unpaid vacation and severance pay under the IWPCA, seeking to hold Kowa Printing, Kowa and Huston-Patterson jointly liable for the amounts owed. *Id*. at 103, 838 N.E.2d at 896.

The Illinois Supreme Court acknowledged that: Kowa Printing and Huston-Patterson operated under the same service mark; Kowa served as the sole officer and director of both companies; and both companies used substantially the same administrative support, including payroll, purchasing, and accounting services. *Id*. at 103-04, 838 N.E.2d at 896-97. The court nonetheless held that the companies were not joint employers under the Act. The court first explained that "[t]he test for the existence of joint employers is whether 'two or more employers exert significant control over the same employees – where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment.'" *Id*. at 117, 838 N.E.2d at 904. Relevant factors to consider include "the putative joint employer's role in hiring and firing; promotions and demotions; setting wages, work hours, and other terms and conditions of employment; discipline; and actual day-to-day supervision and direction of employees on the job." *Id*. (internal quotations omitted). *See also Shales v. Lanas Constr., Inc.*, No. 07 C 2970, 2009 WL 562607, at *5 (N.D. Ill. Mar. 4, 2009) (citing *Papa v. Katy Indus., Inc.*, 166 F.3d 937, 939 (7th Cir. 1999)) ("Courts generally consider four factors in determining whether two separate entities should be considered a 'single employer': interrelation of operations, common management, common ownership, and centralized control of labor relations and personnel.")

In finding that Kowa Printing and Huston-Patterson were not joint employers, the court observed that there was no evidence that Huston-Patterson controlled the essential terms and conditions of the plaintiffs' employment, including "hiring, firing, discipline, hours, or wages." *Id*. at 118, 838 N.E.2d at 904-05. To the contrary, the companies had "separate employees, separate management, separate bank accounts, separate collective-bargaining agreements, and separate retirement plans." *Id*. at 117, 838 N.E.2d at 904.

RIS contends that, as in *Andrews*, Plaintiffs have not demonstrated any shared control of employees between RIS and The Placers. Plaintiffs respond that Fernando Rosales, who was employed by The Placers, worked "side by side" with Margarita Rosales, who was employed by RIS, performing tasks on the same accounts under the same supervision. (Doc. 101, at 5). Based on the Illinois Supreme Court's criteria,

| STATEMENT |
|---|

however, this in no way demonstrates joint employer status between The Placers and RIS. Notably, Margarita Rosales was initially named as a plaintiff in this case, but Plaintiffs removed her from the lawsuit in their First Amended Class Action Complaint ("Amended Complaint") dated June 21, 2010. (Doc. 89). Moreover, though Plaintiffs sought in February 2010 to "correct the name of Defendant from 'Randstad North America, L.P. d/b/a Randstad Work Solutions' to 'The Placers, Ltd. and Randstad Inhouse Services, L.P. d/b/a/ Randstad,'" they ultimately opted not to include RIS as a named defendant. (Doc. 62, ¶ 2; Doc. 89). Plaintiffs do allege in the Amended Complaint that RIS employs individuals in Illinois and used a vacation policy similar to the one The Placers used. (Doc. 89 ¶ 16). Yet Plaintiffs have not alleged any facts suggesting that RIS controlled the essential terms and conditions of their employment, nor have they cited any cases demonstrating that they are entitled to obtain discovery from a non-party in order to explore the viability of a single or joint employer theory.

Another court in this district recently quashed a subpoena issued under similar circumstances. In *Romo v. Manpower, Inc.*, No. 09 C 3429 (N.D. Ill. Aug. 2, 2010) (Denlow, M.J.), the plaintiffs alleged that Manpower, Inc., a temporary staffing services business, violated the IWPCA with respect to employee vacation pay. The plaintiffs issued a document subpoena to Rock River Temporary Services, Inc. ("Rock River"), a franchise operation of Manpower, claiming that Rock River employees worked "under Manpower policies" and "on national Manpower accounts," and that Manpower was "at a minimum their joint employer." (Doc. 92, at 4-5).

In quashing the subpoena, the court noted that the complaint failed to allege that individuals working for Rock River had an employment relationship with Manpower. (*Id*. at 6). The court explained that the plaintiffs could not "take the position I'm suing Manpower, Inc., and therefore every entity that may or may not have a relationship with them is now subject to the discovery in the case." (*Id*. at 7). Rather, "you need to allege in the complaint" that Rock River is a joint employer with Manpower. "You can't just throw the name Manpower out there and not give anybody notice that you're claiming that the people that are there at Rock River . . . are subject to Manpower. If you want to allege that, allege that. . . . But . . . this is a fishing expedition at this stage where you're seeking the documents, seeing whether you can bring them in or not bring them in." (*Id*. at 8-9).

In this case, similarly, Plaintiffs appear to be using the subpoena to determine whether they can bring RIS into this case. As noted, however, Plaintiffs have not cited any authority supporting their specific request for discovery from a non-party, particularly where, as here, the allegations of single or joint employer status are largely nonexistent. On the facts presented, the Court finds that the subpoena is improper and must be quashed.

  C.  **Confidentiality**

Having quashed the subpoena on relevancy and burdensomeness grounds, the Court need not address the parties' arguments regarding confidentiality.

## Conclusion

For the reasons explained above, RIS's motion to quash Plaintiffs' subpoena is granted.